R. Bruce MILLER, an Individual

v.

EICHLEAY ENGINEERS, INC., a corporation, the Peter F. Loftus Corporation Executive Supplemental Pension Plan.

Appeal of PETER F. LOFTUS CORPORATION EXECUTIVE SUPPLEMENTAL PENSION PLAN, Appellant.

No. 89–3076.

United States Court of Appeals, Third Circuit.

Argued June 15, 1989.

Decided Sept. 14, 1989.

OPINION OF THE COURT

ROTH, District Judge.

**I.**

Appellee R. Bruce Miller brings this action for alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. section 1001 *et seq.* ("ERISA"), against his former employer and an employee pension plan created by his former employer. The district court entered summary judgment in favor of the former employer, Eichleay Engineers, Inc. ("EEI"), against Miller, and in Miller's favor against the employee pension plan, the Peter F. Loftus Corporation Executive Supplemental Pension Plan (the "PFL Plan"). The PFL Plan has appealed the summary judgment against it. We will reverse.

**II.**

On July 16, 1979, at the age of 59, appellee began working for the Peter F. Loftus Corporation ("PFL"). Later that same year, PFL created the PFL Plan to supplement the retirement income of certain PFL employees. The minutes of the Board of Directors' meetings for September 12 and December 12, 1979, document the creation and adoption of the PFL Plan. App. at 250–58.[1] The expressed purpose of the PFL Plan, as reflected in the resolutions adopted by the Board at the December meeting, was to "attract" and "motivate" executives in order to encourage them to stay with PFL until age 65. App. at 257. Those resolutions authorize the President of PFL to "designate the executives to be eligible to participate in the plan." *Id.*

In a memorandum dated December 20, 1979, William McAleer, who was at the time President and Chairman of the Board

Russell J. Boehner, John F. Leblond (argued), Beth L. Balzer, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellant.

John J. Myers (argued), Charles H. Saul, Eckert Seamans Cherin & Mellott, Pittsburgh, Pa., for appellee.

Before SLOVITER and COWEN, Circuit Judges, and ROTH, District Judge.\*

---

\* Honorable Jane R. Roth, United States District Judge for the District of Delaware, sitting by designation.

1. The relevant resolutions adopted by the PFL Board at the December 12, 1979, meeting provide as follows:

 RESOLVED, that in order to attract and motivate executives and to encourage them to remain with the corporation until retirement at age 65, the Board of Directors hereby approves the foregoing plan;

 RESOLVED, that the appropriate officers are hereby authorized and directed to execute individual contracts with the executives designated as eligible to participate in the plan; RESOLVED, that the President of the corporation is hereby authorized to designate the executives to be eligible to participate in the plan.

 App. at 257.

of PFL, announced the adoption of the PFL Plan. App. at 260. McAleer's memorandum provides that "those in the management group" who had completed five years of service and were under 65 years of age would be "eligible" to participate in the PFL Plan. Id.[2] Stating that the Board of Directors had authorized him to proceed with implementation of the PFL Plan, McAleer's memorandum named the eight "initial" PFL Plan participants. Id.[3] Attached to McAleer's memorandum was a two-page summary of the PFL Plan providing that the program would be "implemented through individual contracts between the Corporation and the covered executives." App. at 242–43.[4] Appellee, who had been working at PFL less than six months at the time the memorandum was distributed, concedes that he did not receive an original copy of the memorandum but rather obtained photocopies of it from a fellow PFL employee. App. at 292–93, 298.

In a second memorandum dated April 20, 1983, McAleer announced that four more individuals had become eligible to participate in the PFL Plan. App. at 397. No more such designations were made by McAleer or any other officer of PFL. Altogether, twelve PFL employees were specifically named eligible to participate in the PFL Plan.

Appellee first formally inquired about his ability to participate in the PFL Plan in a letter to McAleer's successor, Samuel C. Lyon, dated December 12, 1984.[5] App. at 266. Shortly after sending the letter, appellee was told by Clark Rainey, EEI Director of Personnel, that his request for a supplemental pension had been denied because the PFL Plan had been terminated in 1983. App. at 161, 266. That conversation is documented by a note Rainey wrote to Lyon on a copy of appellee's letter. App. at 266. In a second letter to Lyon, dated March 12, 1985, appellee again inquired about participation in the PFL Plan but received no reply.

Appellee eventually retained an attorney who wrote a letter to EEI dated August 7, 1985, requesting that EEI commence paying appellee benefits under the PFL Plan. App. at 391–93. By letter dated December 20, 1985, an attorney representing EEI and

2. McAleer's memorandum dated December 20, 1979, states, in pertinent part, as follows:

> The Board of Directors authorized me to proceed with implementing an Executive Supplemental Pension Plan which will provide additional supplemental benefits over and above those provided by our Thrift Plan for key management personnel (officers, department heads, and project engineers) in our organization. A copy of the summary description of this plan is attached.
> Those in the management group with five years or more of service will be eligible to participate.
> The initial participants in this plan are: William K. McAleer, Samuel C. Lyon, Lee Swanson, John Sonoski, Boris Kramich, E.J. Kenna, Fred Reginella, and Shirley Vtipil.

App. at 260.

3. The district court's Memorandum Opinion stated that nine participants were designated in McAleer's memorandum. See Miller v. Eichleay Engineers, Inc., and the Peter F. Loftus Corp. Executive Supplemental Pension Plan, Civil Action No. 86–1695, slip op. at 2 (W.D.Pa. Jan. 9, 1989). App. at 484. However, the portion of the memorandum which identifies the original participants mentions only eight. Exhibit C to Affidavit of William F. McAleer. App. at 260. Both parties to this appeal agree that eight participants were originally designated.

4. The summary states, in pertinent part, as follows:

> Peter F. Loftus Corporation ("Corporation") intends to make available to certain designated employees who have completed at least five years of service with the Corporation a supplemental pension program designed to supplement the executive's retirement income at age 65 and to provide the executive's family with a limited salary protection in the event of the executive's death prior to age 65. The purpose of the plan is to help attract and retain key executive employees....
> The program will be implemented through individual contracts between the corporation and the covered executives....

App. at 11–12.

5. On August 31, 1982, all of the outstanding stock of PFL's parent company, Loftus Associates, Inc., was acquired by EEI. App. at 111. After the acquisition, Loftus Associates was dissolved, PFL was made a division of EEI, and appellee became an employee of EEI. In December of 1984, when appellant wrote to Lyon requesting benefits, Lyon was the President of the PFL Division of EEI and Theodore Nelson was the President of EEI. App. at 418–19, 449.

the PFL Plan informed appellee's attorney that because appellee had not been chosen by the President of PFL to receive a PFL Plan contract before termination of the PFL Plan in 1983, appellee was not entitled to participate in the PFL Plan. App. at 394–96.

### III.

Appellee originally sued his employer, EEI, in the Court of Common Pleas of Allegheny County, Pennsylvania, to recover the benefits allegedly due him under the PFL Plan. EEI removed the action to the District Court for the Western District of Pennsylvania. Appellee's motion to remand the action was denied by the district court, which found that, because appellee's claim was exclusively cognizable under ERISA, 29 U.S.C. section 1132(a)(1)(B), appellee had stated a claim arising under the laws of the United States. *Miller v. Eichleay Engineers, Inc.*, Civil Action No. 86–1695, slip op. (W.D.Pa. Nov. 12, 1986). App. at 24. Appellee subsequently filed an amended complaint dated March 6, 1987, tailoring his claims to allege specific ERISA violations and joining appellant as an additional defendant. App. at 32–38.

Appellee, EEI and appellant each filed motions for summary judgment. On January 9, 1989, the district court issued a second Memorandum Opinion in which it granted EEI's motion for summary judgment because it found that EEI, the sponsor and administrator of the PFL Plan, was not a proper party to a claim for benefits and that, in any event, appellee had failed to allege facts entitling him to recover against EEI either under ERISA or on a breach of fiduciary duty theory. *Miller v. Eichleay Engineers, Inc., and the Peter F. Loftus Corp. Executive Supplemental Pension Plan*, Civil Action No. 86–1695, slip op. at 3–4 (W.D.Pa. Jan. 9, 1989). App. at 484.[6] Instead, the district court determined, "in a suit for benefits the plan is the

---

6. The appeal before us stems from the district court's second memorandum opinion, which will be cited in this Opinion as "slip op."

7. 29 U.S.C. § 1002(3) provides as follows:

proper party defendant." Slip op. at 3. Considering the circumstances surrounding the creation and announcement of the PFL Plan, the court found that the PFL Plan was a "plan" for ERISA purposes and could therefore be held liable in an action for benefits. *Id.* at 6–7. *See* 29 U.S.C. § 1002(3).[7] The court also found, contrary to appellant's contentions, that the PFL Plan had not been terminated prior to appellee's demand for benefits. *Id.* at 7. Accordingly, the court set out to determine whether the PFL Plan had committed an ERISA violation by denying appellee's demand.

Appellee's claim for benefits is based on his assertion that the PFL Board of Directors created the PFL Plan with the intent to provide benefits for all management personnel who had worked for PFL for five years before turning 65. Appellant, on the other hand, maintains that the Board's intention was to leave the final decision on who would receive such benefits to the President of EEI and that the language in the McAleer memorandum and attached plan summary simply set out the minimum qualifications necessary for employees to become eligible for PFL Plan coverage. According to appellant, only those qualified candidates who received a PFL Plan contract actually became entitled to receive benefits and the decision whether to award such contracts rested solely with the President.

This Court has previously recognized that, when an unfunded pension plan is controlled by the employer, there is always an incentive for the employer/administrator to deny benefits. *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 144–45 (3d Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988), *aff'd in part, rev'd in part,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Bruch,* Judge Becker pointed out the inherent problem with such arrangements:

> The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

"[b]ecause the plan is unfunded, every dollar provided in benefits is a dollar spent by defendant Firestone, the employer; and every dollar saved by the administrator on behalf of his employer is a dollar in Firestone's pocket." 828 F.2d at 144.

This Court held in *Bruch* that the conflict of interest endemic to arrangements where the employer is also the plan administrator requires that decisions of the employer/administrator granting or denying benefits must be construed as if the plan were an arms-length contract. 828 F.2d at 145. Three principles of contract construction were suggested as an aid to courts attempting to identify the intention of parties to such a contract: trade usage, past performance, and other manifestations of the parties' intent. *Id.* at 147–48. In its opinion in this case, the Supreme Court approved the standard of review enunciated in *Bruch.* 109 S.Ct. at 956.

In light of its determination that EEI was both sponsor and administrator of the PFL Plan, the district court concluded that it was bound to review the decision to deny appellee benefits in accordance with the arms-length contract standard developed in *Bruch.* Slip op. at 8. The court applied the three principles of construction recommended in *Bruch* in order to determine whether the PFL Board members who adopted the PFL Plan had intended that all employees in appellee's position—in other words, all executives who had worked for PFL for at least five years before turning 65—receive benefits automatically.

Looking first to the usage of trade, the district court was unable to reconcile appellant's claimed strict adherence to a practice of extending benefits only to those candidates who had been awarded a contract with appellant's failure to comply with ERISA's reporting and disclosure requirements, 29 U.S.C. sections 1021–1031. Slip op. at 11–12.[8] Finding the PFL Plan's "administrative practice ... probative of whether a decision to deny benefits was infected with an objectionable scheme," the court interpreted this incongruity as an indication that the decision to deny appellee benefits might have been arbitrary. *Id.*

Second, the district court reviewed the past practices of PFL and EEI in executing the PFL Plan and found, despite evidence to the contrary presented by appellant, that virtually all individuals who had become eligible for benefits before appellee had received benefits.[9] The court found that this record cast further doubt on appellant's contention that the PFL Board had not intended that benefits be awarded automatically to all eligible PFL employees but rather had given the administrator broad discretion to deny benefits to eligible PFL employees by denying them contracts. *Id.* at 13.

Third, the district court examined other manifestations of the intent of the PFL Board which adopted the PFL Plan—minutes of Board meetings, resolutions of the Board, the PFL Plan summary, the PFL Plan contract—and concluded that the Board had intended individual contracts to function as a condition subsequent, rather than precedent, to PFL Plan coverage. *Id.* at 13–18. Once again, the court made this determination despite evidence to the contrary submitted by appellant.

---

8. In determining that appellant had failed to comply with the reporting and disclosure requirements of ERISA, the district court did not determine whether the PFL Plan was a "top hat" plan. Slip op. at 10. A top hat plan is a "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1). Top hat plans "are not subject to the funding, participation, vesting or fiduciary standards applicable to other employee benefit plans." *Pane v. RCA Corp.,* 868 F.2d 631, 637 (3d Cir.1989), *citing Barrowclough v. Kidder Peabody & Co.,* 752 F.2d 923 (3d Cir.1985). Because issues as to material facts remain to be resolved, we will not now address appellant's argument that the PFL Plan was a top hat plan. *See infra* note 10.

9. Appellee acknowledged two candidates who met the job title and tenure requirements for PFL Plan coverage but were not awarded benefits; however, appellee explained this situation in a manner that persuaded the district court that they were denied benefits for reasons not relevant here: one was over 65 years of age by the time he achieved five years of service and the other was receiving disability retirement benefits. Slip op. at 12–13.

Application of the *Bruch* analysis led the district court to the conclusion that McAleer's memorandum of December 20, 1979, and attached PFL Plan summary had the effect desired by the PFL Board of making appellee eligible for benefits under the PFL Plan. *Id.* at 19. The court then proceeded to examine whether those documents reserved in the PFL Plan administrator the right to make a further discretionary choice among eligible candidates and, if such a choice were authorized, whether EEI exercised that choice properly when it denied appellee's request for benefits. *Id.* at 8–9. The court stated that it could find no ground upon which EEI could justify its attempt to stray from what the court had determined to be the PFL Board's original intention in creating the PFL Plan—PFL Plan coverage for all eligible employees. *Id.* at 19. Moreover, the court held, even if such discretion had been part of the PFL Plan, that discretion had been exercised in an "arbitrary and unattractive manner" and appellant's decision to exclude appellee was therefore unenforceable. *Id.*

## IV.

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. section 1291. When reviewing grants of summary judgment, the scope of our review is plenary. *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 280 (3d Cir.1988) (citation omitted).

## V.

Appellant brings this appeal arguing, *inter alia*, that the district court erred in granting appellee's motion for summary judgment because the court allegedly ignored genuine disputes between the parties regarding certain material facts.[10] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In accordance with the language of Rule 56(c), it is not within the power of the district court to decide issues of fact. The court's role is limited to determining "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment has the burden of proving that no genuine issues exist as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985). However, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Furthermore, the nonmoving party cannot simply rely on the assertions in its pleadings. *Id.* It must present evidence sufficient to show that there is a genuine issue for trial and to enable a jury to return a verdict in its favor. *Id.* at 249, 106 S.Ct. at 2510.

Where the evidence presented by the nonmoving party "is merely colorable ... or is not significantly probative ...." a motion for summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). As a matter of fact, if the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court

---

**10.** Appellant raises four arguments in support of its appeal: that the district court erred by failing to decide whether the PFL Plan was a "top hat" plan under ERISA; that the district court erred by requiring the PFL Plan to comply with the participation, vesting, and fiduciary requirements of ERISA; that the district court erred by applying a fiduciary standard when reviewing the decision to deny appellee benefits;

and that the district court erred by granting summary judgment even though it found that there were disputed issues of material fact. Because we will reverse the summary judgment against appellant on the basis of our determination that there were disputed issues as to material facts which precluded summary judgment, it is unnecessary for us to consider appellant's other arguments.

must, however, construe all of the evidence in the record in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

The district court observed that there were "discrepancies" between the parties' accounts of the facts connected with past practices and manifestations of intent, but the court resolved those discrepancies in appellee's favor. Slip op. at 12, 16–19. By applying the *Bruch* contract analysis, the court implicitly acknowledged that these facts were material; thus, the summary judgment necessarily resulted from a determination that the disputes associated with these facts did not raise any genuine issues. We believe, however, that when viewed in the light most favorable to appellant, the evidence submitted by appellant was sufficient to raise genuine issues as to facts material to the outcome of this case.

For example, with regard to past practices, the district court declined to consider proof submitted by appellant that several PFL and EEI employees, who were eligible for inclusion in the PFL Plan because they met the job position and tenure requirements, received no benefits. *Id.* at 12; Appellant's Brief at 10–11, 22, 47–48. As appellant points out, the district court apparently assumed that only those persons who were in the employ of PFL on December 20, 1979, the date that the PFL Plan was first announced, could become eligible for benefits. Appellant's Brief at 22, n. 14. But there was no specific finding made by the court to that effect and no support for that finding in the terms of the documents establishing the PFL Plan. Indeed, such a finding might be incorrect in light of the fact that EEI was the successor in interest to Loftus Associates, Inc.

The district court also declined to include in its consideration of past practices the eligibility for benefits of EEI employees who were hired by PFL but did not complete five years of service until after December of 1984, when appellee's claim was denied. However, we consider the fact that those employees' claims were denied to be highly relevant to the question of whether EEI singled out appellee arbitrarily or simply chose not to grant any requests for benefits during that period. We can discern no justification for narrowing the scope of the consideration of the past practices of PFL and EEI to exclude these facts. Certainly the mandate that a court consider the evidence in the light most favorable to the nonmoving party also requires that the court not exclude that evidence altogether.

Furthermore, with regard to manifestations of intent, the district court discredited testimony by PFL/EEI officers and employees Samuel Lyon, Walter J. Kissel, Boris Kramich and Theodore Nelson, setting forth their interpretations of the Board resolutions establishing the PFL Plan, all of which contradicted McAleer's testimony regarding his interpretation of the PFL Plan. Slip op. at 19–21. All four of these men, the district court conceded, were of the opinion that before an eligible employee could receive PFL Plan benefits he had to be designated by the President of PFL or, subsequently, EEI. *Id.*

The district court was especially unwilling to accept the testimony of Nelson, who became President of EEI in 1984. It was Nelson who decided to deny appellee benefits under the PFL Plan, and the district court found his testimony concerning the making of that decision "suspect." *Id.* at 20. The court found that Nelson had little or no knowledge of the PFL Plan at the time he denied appellee's claim. *Id.* at 21. More specifically, the court found that Nelson was unfamiliar with the alleged procedure for becoming eligible for benefits, was unaware of his own purported discretionary power to designate beneficiaries and was unaware that people had been admitted into the Plan during his tenure as EEI President. *Id.* at 20–21. The court concluded that Nelson had arbitrarily denied appellee benefits under the PFL Plan "without ever having seen the necessary documents" for the simple reason that Nelson did not want the PFL Plan to pay those benefits. *Id.* at 22.

The district court's conclusion regarding the manifestations of the parties' intentions is certainly a plausible one and may very well be the conclusion which will be reached by the trier of fact. Nevertheless, we are convinced that the court would never have reached that conclusion at the summary judgment stage had it not failed to consider the facts in the light most favorable to appellant.

We conclude that the district court's decision to grant summary judgment in appellee's favor was erroneous as a matter of law. This is not a case in which the nonmoving party has failed to produce probative evidence in support of his assertions. On the contrary, appellant has produced several witnesses offering relevant, plausible, consistent testimony. Viewing the evidence in the light most favorable to the appellant, there can be no doubt that genuine issues of fact have been raised. Furthermore, as this Court's decision in *Bruch* indicates, the disputed issues of fact are not simply material, but are central to interpreting the intentions of the Board of PFL in adopting the PFL Plan.[11] Indeed, they have proven to be outcome-determinative.

## VI.

For the reasons stated above, we will reverse the summary judgment against the PFL Plan in favor of R. Bruce Miller and remand for further proceedings consistent with this Opinion.

---

**11.** In *Bruch*, plaintiffs alleged violations of the fiduciary responsibility rules of ERISA by their former employer, which was also the administrator of an unfunded severance plan. Appellant argues that because the PFL Plan is a top hat plan, exempt from the fiduciary responsibility rules of ERISA, it was error for the district court to apply the *Bruch* arms-length contract analysis in assessing EEI's decision to deny appellee benefits. Appellant's argument ignores the language of the Supreme Court's decision in *Bruch*, which was filed after the district court's opinion in this case: "[t]hus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." 109 S.Ct. at 956. The district court, in its first memorandum opinion, held that plaintiff's claim stated a cause of action under 29 U.S.C. § 1132(a)(1)(B), and we agree. *See supra* at 33. We therefore reject appellant's argument and hold that the *de novo* standard of review and the contract principles employed by this Court pursuant to that standard are applicable in actions reviewing actions of plan administrators, whether or not the plan is a top hat plan.