In re DONALD G. ATTEBERRY,
DVM, P.A., Debtor.

DONALD G. ATTEBERRY,
DVM, P.A., Plaintiff,

v.

BARCLAYS BANK PLC, Defendant.

No. 92–4270–SAC.
Bankruptcy No. 91–40357.
Adv. No. 91–7432.

United States District Court,
D. Kansas.

Aug. 24, 1993.

2

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Donald Atteberry, DVM, PA.

N. Larry Bork, Wayne T. Stratton, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Barclays Bank PLC.

U.S. Trustee's Office, Wichita, KS.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is an appeal from the bankruptcy court's decision that it had personal jurisdiction over the defendant but that the case should be dismissed under the doctrine of forum non conveniens. The plaintiff, Donald G. Atteberry, DVM, P.A. ("Atteberry"), appeals the forum non conveniens ruling, and the defendant, Barclays Bank PLC ("Barclays"), cross appeals the personal jurisdiction ruling.

As the debtor-in-possession of a Chapter 11 bankruptcy, Atteberry filed an adversary action against Barclays seeking to recover $800,000 on claims of breach of contract and fraud. The claims arise from negotiations and agreements allegedly occurring in 1989. The following facts are not disputed. Atteberry negotiated an agreement with two men, Fidelis Anujuo and Edward Ephrin, who represented themselves to be agents of the Nigerian National Petroleum Corporation ("NNPC"). Atteberry agreed to furnish and implant in buyers' cattle 2,000 embryos each year for 5 years. Anujuo and Ephrin agreed to deposit $8 million into an escrow account

maintained at a bank in Topeka, Kansas, on January 1, 1990, and to pay Atteberry $1.6 million each year for 5 years.

In its complaint, Atteberry alleges that it reached an oral agreement with Barclays, acting through its agent, E.N. Newton, which included the following terms. Atteberry would deposit $800,000 with Barclays for advance payment of taxes on the money to be paid under the contract between Atteberry and Anujuo and Ephrin. Barclays would hold the $800,000 in escrow for the benefit of the plaintiff and the NNPC and its agents, Anujuo and Ephrin, "until disbursal of said funds was agreed to in writing by all parties." (Complaint, ¶ 5).

On six different occasions, beginning June 20, 1989, and ending September 18, 1989, Atteberry wire transferred a total of $800,000 from two Kansas banks to Barclays in London, England. The written documentation prepared by the Kansas banks for four of the wire transfers directed Barclays to deposit the money into an account for E.E. Ephrin. As for the other two wire transfers, Barclays was directed to deposit the money into an account for Fidelis Anujuo. Atteberry alleges that Barclays represented that the deposits to these accounts would be transferred to a central escrow account. It is undisputed that the $800,000 was never deposited nor held in an escrow account and, instead, was withdrawn from the individual accounts.

Barclays is an English bank with its principal place of business in London, England, and with a branch office in New York, New York. In support of its motion to dismiss, Barclays submitted affidavits from James Haugh, its associate general counsel in New York, and Ian Newton, the principal of the Foreign Department at the Mayfair branch of Barclays in London, England. Newton denies any knowledge of having met or spoken with anyone associated with the plaintiff or of entering into any agreement regarding the deposit of $800,000 into an escrow account. Haugh avers that Emmanuel Edem Ephraim, a/k/a Edward Emmanuel Ephraim, and Fidel Chidi Anujuo maintained individual accounts with Barclays in London and that all contacts between Barclays and Ephraim and Anujuo occurred in London, England. Upon information and belief, Haugh also avers that at the time of the transactions in question Ephraim was a resident of London, England, and Anujuo was a resident of both Lagos, Nigeria, and London, England. Haugh further states that Ian Newton has no recollection or records of any meeting or conversation with Donald Atteberry or anyone associated with him. The defendant insists that the only contact between it and the plaintiff was through the defendant's receipt of the wire transfers from the plaintiff for deposit to the individual accounts of Barclays' customers, Ephraim and Anujuo. The defendant denies that it maintained or conducted any business in Kansas.

**Personal Jurisdiction**

In its brief in support of the cross appeal, Barclays says the district court need not consider the personal jurisdiction question if it affirms the bankruptcy court's dismissal for forum non conveniens. Despite the cross appellant's position, this option is not available. "[T]he doctrine of forum non conveniens can never apply if there is absence of jurisdiction or mistake of venue." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947). Consequently, when jurisdictional and forum non conveniens issues are both pending, the court must decide the former first. *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F.Supp. 215, 219 (S.D.N.Y.1992), *aff'd*, 994 F.2d 996 (2nd Cir.1993); 15 Charles A. Wright, et al., *Federal Practice and Procedure* § 3828 at 287 (1986).

Barclays contends the bankruptcy court erred in not considering its contacts to Kansas for purposes of personal jurisdiction. Citing Judge Kelly's decisions in *Wichita Federal Savings & Loan Ass'n v. Landmark Group Inc.*, 657 F.Supp. 1182 (D.Kan.1987), and *Wichita Federal Savings & Loan Ass'n v. Landmark Group Inc.*, 674 F.Supp. 321 (D.Kan.1987), and Judge Saffels' decisions in *Farr v. Designer Phosphate and Premix International, Inc.*, No. 90–4180–S, 1991 WL 47401, 1991 U.S.Dist. LEXIS 4342 (D.Kan. Mar. 27,

1991), and *Farr v. Designer Phosphate and Premix International, Inc.*, 777 F.Supp. 890, 893 (D.Kan.1991), the defendant argues that even when the suit is brought under a federal statute that allows for nationwide service the Fifth Amendment requires the defendant to have minimum contacts with the forum state. Though they support the defendant's position, these decisions by no means represent what a majority of the courts have done. As far as precedent that is binding on this court, neither the Supreme Court nor the Tenth Circuit have decided the issue.

Starting first with our own district, the courts are divided. At least three of the judges have held or at least said that a defendant needs only minimum contacts with the United States and not the forum state when served under a federal statute providing for nationwide service of process. *Monarch Normandy v. Normandy Square*, 817 F.Supp. 899, 902 (D.Kan.1993) (Belot, J.); *US Telecom, Inc. v. Hubert*, 678 F.Supp. 1500, 1507–08 (D.Kan.1987) (O'Connor, J.); *Pioneer Properties, Inc. v. Martin*, 557 F.Supp. 1354, 1358 (D.Kan. 1983) (Crow, J.), *appeal dismissed*, 776 F.2d 888 (10th Cir.1985); *see Monument Builders of Greater Kansas City, Inc. v. American Cemetery Assoc.*, No. 84–2469–S, 1990 WL 269872, 1990 U.S.Dist. LEXIS 18886 (D.Kan. Oct. 18, 1990) (Saffels, J.). In *Wichita Federal*, Judge Kelly largely relied on the Supreme Court's statement in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03, 102 S.Ct. 2099, 2104–05, 72 L.Ed.2d 492 (1982), that personal jurisdiction requirements flow from the Due Process Clause and restrict judicial authority not for sovereignty reasons but as protection for individual liberty interests. Judge Belot correctly observed that the Supreme Court made this statement in applying the Fourteenth Amendment rather than the Fifth Amendment. *Monarch Normandy*, 817 F.Supp. at 902 n. 1. Moreover, the purpose and meaning of the Court's dictum is strained when read as a rejection of the theoretical relationship between federal sovereignty, federal question jurisdiction, and personal jurisdiction. *Go–Video, Inc.*

*v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1415–16 (9th Cir.1989). However interpreted, this dictum does not affect the reasoning found in more recent decisions that a national contacts approach is based on a statute authorizing nationwide service of process rather than some theory of federal sovereignty. *Id.; cf. Omni Capital International v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 102 n. 5, 108 S.Ct. 404, 408 n. 5, 98 L.Ed.2d 415 (1987) (Court implicitly recognized that a threshold requirement to a national contacts approach is a federal statute authorizing nationwide service of process).

"[A]ll of the courts of appeals that have addressed the question have applied a national contacts standard when process is served under an applicable federal service provision." 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.1 at 311 (1987); *see, e.g., United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993); *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir.1992); *Go–Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d at 1414–16; *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671–72 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300, 314–15 (2nd Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981).

Arising under Title 11, this case is one of federal question, 28 U.S.C. § 1334, and the nationwide service of process provisions of Bankruptcy Rule 7004(d) apply. Consequently, the bankruptcy court correctly focused on the defendant's contacts with the United States rather than Kansas. *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1982); *In re General American Communications Corp.*, 130 B.R. 136, 160–61 (S.D.N.Y.1991); *In re Highway Equipment Co.*, 120 B.R. 910, 914–15 (Bankr.S.D.Ohio 1990); *In re Rusco Industries, Inc.*, 104 B.R. 548, 550–51 (Bankr.

S.D.Ga.1989). Barclays challenges only the aggregate national contacts standard used by the bankruptcy court and not the findings made in applying it. Believing that the compelling weight of authority supports the standard used by the bankruptcy court, the district court affirms the denial of the defendant's motion to dismiss for lack of personal jurisdiction.

### Forum Non Conveniens

▆ Atteberry appeals the bankruptcy court's dismissal for forum non conveniens. He contends the court failed to consider all relevant factors, in particular, the presumption in favor of the plaintiff's choice of forum and the terms of the agreement between plaintiff and Anujuo and Ephrin. Atteberry also argues the court misapplied the different factors and failed to hold Barclays to its high burden.

▆ The primary focus of a forum non conveniens inquiry is the determination of the more convenient forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). The inquiry begins with deciding if an alternative forum exists. 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. In the Tenth Circuit, a court also must first decide whether foreign law governs. *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir.1983). "If domestic law applies, or if the foreign forum is inadequate, then forum non conveniens doctrine is inapplicable." *Rivendell Forest Products, Ltd. v. Canadian Pacific Ltd.*, 2 F.3d 990, 993 n. 4 (10th Cir.1993). The bankruptcy court here concluded that English law would govern the plaintiff's claims and that English courts provided an adequate forum. The plaintiff does not seriously dispute either conclusion.[1]

▆ Sitting as an appeals court, this court's scope of review on a forum non conveniens ruling is quite narrow. The Supreme Court described the standard of review in these terms:

> The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

*Piper Aircraft Co. v. Reyno*, 454 U.S. at 257, 102 S.Ct. at 266 (citations omitted). Such review, however, "is not merely perfunctory," but requires a careful examination of the lower court's reasoning. *Rivendell Forest Products, Ltd.*, 2 F.3d at 992. The appellate court relies heavily on the lower court's discretion in balancing the factors, *Borden, Inc. v. Meiji Milk Products Co., Ltd.*, 919 F.2d 822, 828 (2nd Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991), and finds an abuse of such discretion only when the factors are not carefully considered, *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1001 (2nd Cir.1993). That the appeals court may think another forum is more convenient is not the controlling test, for the lower court's discretion will be upheld so long as it was not exercised unreasonably or arbitrarily.

▆ Forum non conveniens is a flexible, practical doctrine that turns on the facts of each case. *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 950 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992). The burden falls on the defendant to show that the balance of convenience measured by

---

1. At page ten of its brief, the plaintiff attempts to cloud the matter of governing law with an untenable argument. In plaintiff's opinion, "it is far from clear what law ... properly applies to Atteberry's claims," because Barclays' agent allegedly knew that the plaintiff and Anujuo and Ephrin had entered into an agreement which included the terms that the agreement would be governed by Kansas law and that any litigation regarding it would be brought in Kansas courts. The plaintiff offers no legal explanation or basis for how these facts could affect the determination of which law would govern the plaintiff's contract and fraud claims against the defendant. The plaintiff never alleges that the defendant was a party to the written contract or that the oral agreement with the defendant incorporated that term of the written agreement. To show reversible error, the plaintiff must do more than offer a vague and conclusory statement that something is "far from clear."

the different private and public interests "tilts strongly in favor of trial in the foreign forum." *Maganlal & Co. v. M.G. Chemical Co.*, 942 F.2d 164, 167 (2d Cir. 1991). The illustrative list of considerations underlying the private interest of litigants includes:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The public interest factors are the practical and administrative difficulties with court congestion and calling citizens for jury duty, the "local interest in having localized controversies decided at home," and the interest in having foreign law issues resolved by a foreign tribunal more familiar with the relevant law. *Id.* at 508–09, 67 S.Ct. at 843.

 Atteberry first contends that the bankruptcy court did not give his choice of forum the proper presumptive weight. In effect, Atteberry wants his choice to have dispositive, and not just presumptive, weight. The Supreme Court in *Piper Aircraft* acknowledged the strong presumption attaching to a plaintiff's choice and offered these words on its relative weight:

> In *Koster* [*v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)], we stated that "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." 330 U.S. at 524, 67 S.Ct. at 832.
> . . . .
> A citizen's forum choice should not be given dispositive weight, however. (citations omitted). Citizens or residents deserve somewhat more deference than

foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

454 U.S. at 255 n. 23, 102 S.Ct. at 266 n. 23. In other words, a plaintiff's choice of his residential forum does not preclude a court from dismissing a case for forum non conveniens. *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990). There are circumstances where the plaintiff's choice is accorded less than its near-decisive weight. There is one such circumstance relevant here. "Where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished." *Sussman v. Bank of Israel*, 801 F.Supp. 1068, 1073 (S.D.N.Y.1992), *aff'd*, 990 F.2d 71 (2nd Cir.1993).

 The plaintiff is correct that the bankruptcy court did not mention in its order the presumption in favor of the plaintiff's choice. This alone does not show an abuse of discretion, for there are indications that the bankruptcy court applied the proper standard and required the defendant to show the "balance [of factors were] ... strongly in favor of the defendant." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. The court said that the factors "weigh heavily in favor of England as the proper forum" and later concluded that "England would provide a far more convenient forum for the suit." *In re Atteberry*, 153 B.R. 901 at 906 (Bkrtcy.D.Kan.1992). These statements are simply other ways of saying that the factors "clearly point" to and strongly favor trial in England. *See Piper Aircraft Co.*, 454 U.S. at 255, 102 S.Ct. at 265. Moreover, this is not a case in which the plaintiff's choice of forum rightly deserves the full presumptive weight normally given. Without solicitation from the defendant, the plaintiff voluntarily went

abroad to conduct a banking transaction. The plaintiff and its business associates chose a London bank and entered into a contract with it. The bank allegedly agreed to take receipt of funds sent to London and hold them in London. The plaintiff later sent the funds to London.[2] In short, the London bank did not initiate or solicit the business from an American, did not negotiate or transact any business with the plaintiff in America, and did not agree to perform and did not perform any part of the contract anywhere but London. The plaintiff now complains that the bank by the actions of its agents in London breached the agreement with him and made fraudulent representations. In these circumstances, a court should not allow a plaintiff who voluntarily conducts business in a foreign country to use his American citizenship as a trump against forum non conveniens dismissal.

■ The bankruptcy court's order establishes on its face that the relevant private interests were carefully considered. Most witnesses and sources of proof are in England or are more accessible through litigation there. With the exception of Donald Atteberry, the witnesses to the alleged agreement either reside in England or Nigeria. Because Ian Newton has no recollection of ever meeting Donald Atteberry, the court anticipates that there will be evidence from other witnesses who reside in England regarding this factual dispute. Another likely issue at trial will be the banking practices and policies in England regarding individual and escrow accounts and wire transfers. Relevant evidence again would come from witnesses living in England who are knowledgeable on such matters. To prevail on a fraud claim under English law, the plaintiff presumably would be required to prove more than just the breach of an agreement. This additional evidence could only come from sources of proof located in England.

The cost of obtaining attendance of willing witnesses and of securing documentary evidence appears to be less with a trial in England.

For two of the non-party witnesses, Anujuo and Ephrin, London is where they formerly resided, conducted business, and maintained bank accounts. On these facts, the bankruptcy court assumed that England could make a stronger claim for compelling their attendance than the United States. On appeal, the plaintiff counters with the assumption that the United States would have an equally compelling claim because of the forum selection clause in its agreement with Anujuo and Ephrin. Neither assumption is supported by legal authority; however, the burden is with the appellant to show an abuse of discretion. The plaintiff points out the option of taking the depositions of Anujuo and Ephrin; however, live witnesses are important when there are allegations of fraud.

As far as weighing the private interests, the bankruptcy court did not hold that these interests alone justified a trial in England. Instead, the bankruptcy court went on to consider whether the public interest factors tipped the balance in favor of a trial in England. *See, e.g., Capri Trading v. Bank Bumiputra Malaysia Berhad*, 812 F.Supp. 1041, 1045 (N.D.Cal. 1993). The plaintiff has failed to show error with the bankruptcy court's consideration of these private interest factors.

■ The plaintiff contends the bankruptcy court gave undue weight to the application of English banking laws and failed to consider that Barclays knowingly does business on an international scale. This contention goes to relative weight of England's interest in handling the controversy versus that of the United States.

■ The bankruptcy court rightly observed that England has a much stronger

2. The plaintiff alleges in its complaint that the defendant transacted business in Kansas. The plaintiff, however, submitted nothing to dispute the defendant's affidavit that no agent of the defendant initiated any contact with the plaintiff or had any contact with the plaintiff except through the receipt of wire transfers. The plaintiff did not even respond to these averments. In light of the plaintiff's silence, the bankruptcy court correctly assumed that none of the transactions occurred in Kansas.

interest. First, England is where the alleged agreement was consummated and breached and the alleged misrepresentation was made. Second, Barclays is an English bank subject to regulation there. Because the local banking industry is an important variable in a country's economic policy, England has a compelling interest in regulating local banking activities without the second guessing or interference of foreign courts. Third, this case has little to do with the United States, other than the plaintiff lives here. Except for its branch office in New York, Barclays would have no reason to expect that this transaction would give a United States' court personal jurisdiction over it. On the other hand, when an American company goes overseas to initiate and conduct business with a foreign bank, it should fully expect that the United States' courts may not be available to resolve the disputes arising out of the overseas business dealings. Fourth, English law governs the plaintiff's claims. More importantly, there is the strong likelihood that England has a complex set of banking laws and regulations, just like the United States, which may have to be interpreted and applied in this case. English courts are more ably equipped to determine and apply this law.

The plaintiff argues that Barclays should not be able to hide behind English laws when it conducts international business. The only international aspect of this transaction is that the plaintiff is American. Otherwise, the transaction took place entirely in England. For this reason, England has a much greater interest in handling this controversy than if a foreign branch office of Barclays had handled the transaction.

Even though a trial in England would be inconvenient and maybe more expensive for the plaintiff, this court does not believe the bankruptcy court clearly abused its discretion in weighing the factors. The record establishes that the bankruptcy court carefully considered all of the relevant factors and balanced them reasonably. Giving it the substantial deference that it deserves, the bankruptcy court's decision is affirmed.

IT IS THEREFORE ORDERED that the bankruptcy court's decision of November 12, 1992, is affirmed.