In the Matter of HARVARD INDUSTRIES, INC., individually and d/b/a Elastic Stop Nut (ESBA) and also d/b/a Harvard Interiors, et al., Debtors.

HARMAN AUTOMOTIVE, INC., Plaintiff,

v.

BARRINCORP INDUSTRIES, INC., and Dominion Automotive Industries, Inc., Defendants.

Bankruptcy Nos. 91–404, 91–479 to 91–487. Adv. No. 91–166.

United States Bankruptcy Court, D. Delaware.

Oct. 19, 1994.

See also, 138 B.R. 10, 153 B.R. 668.

84

Audrey S. Stern, Schachter & Stern, Livingston, NJ, Doreen H. Becker, Holfeld & Becker, Wilmington, DE, for plaintiff.

Thomas I. Elkind, Epstein Becker & Green, P.C., Boston, MA, Daniel F. Wolcott, Jr., Laurie Selber Silverstein, Potter Anderson & Corroon, Wilmington, DE, for defendants.

*MEMORANDUM OPINION
AND ORDER*

HELEN S. BALICK, Chief Judge.

In this adversary proceeding, the defendants Barrincorp Industries and Dominion Automotive Industries have moved to dismiss, or alternatively, for summary judgment. While the parties agree that the proceeding is non-core, they all consent to the entry of a final judgment by this court on the issues resolved by this Opinion.

I. *Procedural History*

Harvard Industries, Inc. and its wholly-owned subsidiary Harman Automotive, Inc. are Chapter 11 debtors in this court whose plans of reorganization were confirmed in August 1992. In December 1991, Harman initiated this adversary proceeding against

"Barrincorp Industries, Inc." and "Dominion Automotive Industries, Inc." The defendants in response filed an answer, the above alternative motions, and a motion to withdraw the reference. The United States District Court for the District of Delaware denied this latter motion. Thereafter, Harman amended its complaint twice. The defendants' alternative motions apply to this amended complaint. Harman later cross-moved for summary judgment on certain tax liability issues.

## II. *Legal Standard*

■ The initial focus of the defendants' alternative motions is that the complaint should be dismissed for lack of jurisdiction over the defendants. To resolve these jurisdictional issues, it is necessary to consider matters of record other than the pleadings. However, this does not convert a motion to dismiss into one for summary judgment, as a ruling on the jurisdictional issue is not a ruling on the merits of the complaint. *See generally,* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 485 (2d ed. 1990). The type of motion does make a difference in the context of the personal jurisdiction issue. Where personal jurisdiction is challenged in a motion to dismiss, the plaintiff must do more than submit written materials that create issues of material fact. The plaintiff has a prima facie burden of demonstrating that each defendant possesses contacts with the forum sufficient to give the court in personam jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984); *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1301 (D.Del.1990). This Opinion will apply this standard to the portion of defendants' motion to dismiss which raises personal jurisdiction issues.

The defendants' motion to dismiss also raises certain contract issues. *E.g.,* Docket no. 12 at 2, ¶ 3. The defendants, however, have not consented to the entry of a final judgment by this court on the merits of the complaint, and therefore, those contract issues cannot be addressed in this Opinion. Similarly, the cross-motion for summary judgment by Harman on certain tax liability issues is not addressed in this Opinion.

## III. *Facts*

■ The record consists of admissions and affidavits, as well as documents submitted in response to court interrogatories. The court views this record in the light most favorable to Harman. *Sears, Roebuck & Co.,* 744 F.Supp. at 1301. Applying this standard, the following facts are appropriate to consider and sufficient to discuss the legal issues.

### A. *Preliminary Statement*

As is discussed in section V, defendants' motion requires discussion of the "national contacts" standard, and thus the contacts of the two defendant Canadian corporations with the United States. Subsections III(B) & (C) discuss the corporate history of the defendant corporations and their relation to certain other corporations of Canada and the United States to establish a framework for this contacts analysis. Eight of these corporations contain the word "Dominion" in their respective names; three of the corporations have identical names; and others have similar sounding names. Because of the numerosity and similarity in names of the corporations, the court has created a diagram (Exhibit A of this Opinion) to assist the reader in keeping track of and distinguishing among these corporations.

### B. *The Purchase Agreement*

Once upon a time, in the Province of Ontario, Canada, there were two corporations: Dominion Automotive Industries, Inc. (Dominion Canada I), and Barrincorp Industries, Inc. Dominion Canada I is not a defendant in this proceeding. While it is not clear from the record, Dominion Canada I apparently owned a majority interest in two United States subsidiary corporations: Dominion Auto Accessories of Tennessee, Inc., a Delaware corporation (Dominion Auto Delaware), and Dominion Automotive Industries, Inc., a Tennessee corporation with the same name as Dominion Canada I which shall be referred to as Dominion Tennessee. Dominion Tennessee was located in Tennessee and engaged in various manufacturing processes re-

lating to automobiles. Dominion Auto Delaware also conducted business in Tennessee.

A series of transactions were contemplated to take place on December 9, 1988 involving the above corporations and the corporations Harvard Industries and Harman Automotive. Dominion Canada I would amalgamate into Barrincorp.[1] Barrincorp would thus acquire the shares of Dominion Tennessee and Dominion Auto Delaware. Simultaneous with this acquisition, Barrincorp would sell the shares and assets of these two U.S. subsidiaries to Harman. The price for these shares was $8,024,598.00.

One of the primary documents reflecting these transactions was an 86 page asset-purchase agreement between Harvard and Barrincorp and dated December 9, 1988. The agreement recognized that Dominion Canada I would be amalgamated into Barrincorp and therefore Dominion Canada I was not a signatory to the agreement. However, Dominion Canada I is referred to throughout the agreement and makes numerous representations that are referenced in the complaint. The agreement was executed in Canada.

Schedule U of the agreement referred to certain environmental liabilities Dominion Tennessee and Dominion Auto Delaware possessed because of operations involving environmentally-regulated materials. For each operation listed, the corporation had received the appropriate permit from the relevant regulatory authority, such as the City of Sieverville, Tennessee, and the Tennessee Air Pollution Control Board. The agreement further recognized that one or both of the U.S. corporations used independent contractors to transport regulated waste (including methylene chloride and formic acid) off-site to locations in Kentucky, Georgia, Alabama, and North Carolina. The details of the waste transportation were filed with the Tennessee Department of Health and Environment, Division of Solid Waste Management.

On December 9, the transactional events occurred as contemplated. The amalgamated Barrincorp is one of the two defendants in this proceeding.

### C. Subsequent Corporate Events

In February, 1989, Dominion Tennessee and Dominion Auto Delaware merged with Harman. Harman was the surviving corporation.

On December 18, 1989, Barrincorp amalgamated with another Ontario corporation, DBC Acquisition. The amalgamated entity became Dominion Automotive Industries, Inc. (an Ontario corporation).[2] This latter corporation shall be known hereafter as Dominion Canada II, to distinguish it from Dominion Canada I and Dominion Tennessee.

On June 29, 1990, Dominion Automotive Group, Inc., a Delaware corporation (Dominion Group), acquired all of the shares of Dominion Canada II. Dominion Group also owns all of the shares of Dominion Automotive Industries Corp., a Delaware corporation (Dominion Delaware).

Currently, Dominion Canada II's business consists of the manufacture, marketing and sale of heavy duty truck, utility vehicles and original equipment manufacturer products in Canada. Dominion Canada II maintains no offices, facilities, warehouses, or inventory in the United States. Dominion Delaware, the other subsidiary of Dominion Group, purchases goods from Dominion Canada II, and sells these goods within the United States.

### IV. The Complaint

Certain environmental protection agencies asserted claims against Harman arising out of alleged contamination problems at sites owned by Dominion Tennessee and/or Dominion Auto Delaware prior to the February 1989 merger. Harman alleges that the contaminants existed on the property owned by

---

1. Amalgamation is a term of Canadian corporate law which for the purposes of this discussion is similar to a merger. *See generally* H. Sutherland Q.C. et al., *Fraser's Handbook on Canadian Company Law* at 420 (6th ed. 1975).

2. The defendants suggest that defendant Barrincorp no longer exists as a result of the amalgamation. This is a question of Canadian law that is not addressed in the briefing, and does not affect the issues discussed in this opinion. For the purposes of this motion to dismiss therefore, the court shall assume that Barrincorp still exists.

these two corporations prior to the December 9, 1988 purchase transaction. Harman further asserts it has incurred and will continue to incur substantial damages in connection with the cleanup of these contaminants. The cleanup for each site will have to comply with the applicable State or Federal environmental laws. Through this adversary proceeding, Harman attempts to indemnify itself for these actual and potential environmental liabilities in whole or in part from two entities—Barrincorp and Dominion Canada II.

Specifically, the six counts of Harman's complaint allege tort and breach of contract claims arising out of the December 1988 agreement. The agreement contained several representations and warranties by Barrincorp and Dominion Canada I, including that: (1) Dominion Tennessee and Dominion Auto Delaware had substantially complied with all applicable environmental laws, and (2) neither subsidiary had received notice from any third party source of potential environmental liability. Harman alleges these representations were false and induced it to enter into the agreement to its detriment. Harman also alleges Barrincorp and Dominion Canada I failed to disclose information pertaining to the transporters of regulated waste, and storage of PCBs, to the detriment of Harman. Finally, Harman alleges Barrincorp and Dominion Canada I failed to comply with related indemnification provisions in the agreement. The complaint seeks actual and punitive damages, and related declaratory relief.

Harman asserts that Dominion Canada II, under Canadian law, assumed all representations and warranties made by Barrincorp and Dominion Canada I under the December 9, 1988 agreement, and is therefore liable for their conduct. Harman similarly asserts that Barrincorp is liable for the conduct of Dominion Canada I.

The defendants originally agreed with Harman that Dominion Canada II is the co-defendant in this proceeding. Docket no. 12 at 3; docket no. 14 at 1–2. Later in this proceeding, the defendants shifted their position, and asserted that Dominion Canada I (and not Dominion Canada II) is the co-defendant. Regardless of defendants' position on this issue, the plaintiff Harman may sue whomever it in good faith believes is liable. Therefore, Dominion Canada II is the co-defendant. Whether Harman will prevail against Dominion Canada II on the merits of the complaint is not an issue presently before the court.

**V.** *This Court has Personal Jurisdiction Over Dominion Canada II and Barrincorp*

**A.** *Service of Process was Proper.*

██ The defendant's first ground for dismissal is insufficiency of service of process—that Harman failed to comply with the terms of the applicable service rule.[3] Here, the applicable rules are 7004(b)(3) and 7004(d), which state:

(b) **Service by First Class Mail.** [Service] may be made within the United States ... as follows:

\* \* \* \* \* \*

(3) Upon a ... foreign corporation ... by mailing a copy of the summons and complaint to the attention of an officer, a managing agent or general agent....

\* \* \* \* \* \*

(d) **Nationwide Service of Process.** The summons and complaint and all other process except a subpoena may be served anywhere in the United States.

Fed.R.Bankr.P. 7004(b)(3) & (d).

██ A copy of the summons and complaint in this proceeding was mailed to Susan E. Pravada, Esquire, "Assistant Secretary to Barrincorp Industries, Inc. and Dominion Automotive Industries, Inc." Docket no. 4. These documents were received by Ms. Pravada in Massachusetts—within the United States. Ms. Pravada is indeed an "Assistant Secretary" of Dominion Canada II and was also Assistant Secretary of Barrincorp Indus-

---

**3.** Defendants argue that this court need not reach this issue if the court rules in their favor on the constitutional due process issue. A court, however, considers such a constitutional issue second, and then only if necessary. *E.g., Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974).

tries before its amalgamation. Thus, Harman has easily met its burden that the requirements of Rule 7004(b)(3) and (d) were satisfied. *E.g., United States v. Central States Theatre Corp.,* 187 F.Supp. 114, 142 (D.Neb.1960).

■ Nonetheless, the defendants challenge the sufficiency of process in two ways. First, the defendants argue that Ms. Pravada was not served at an office of the defendants. This is irrelevant under the language of the rule where the named officer was in fact served with the complaint. *See Broadcast Music, Inc. v. Sports Bar, Inc.,* 145 F.R.D. 349, 351 (D.Del.1992).

■ Second, the defendants argue that Bankruptcy Rule 7004(b)(3) has never been used to serve a defendant that does not do business in the United States and has no contacts with the United States. As Judge Aldisert of the Third Circuit Court of Appeals stated:

> [T]he issue here is not one of constitutional due process, but one of compliance with the Federal Rules of Civil Procedure. Therefore the question of 'sufficient contacts' is simply not relevant.

*Gottlieb v. Sandia Am. Corp.,* 452 F.2d 510, 513 (3d Cir.), *cert. denied,* 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971).

B. *Exercise of Personal Jurisdiction Must Comply With the Due Process Clause.*

Defendants also argue that proper service is insufficient to allow the court to exercise in personam jurisdiction over them. They argue that personal service must comply with their due process rights under the United States Constitution,[4] and that exercise of jurisdiction *sub judice* would violate these due process rights.

The parties' briefing has not been particularly consistent, lucid, or helpful on this issue. Initially, Harman believed that the Due Process Clause applied, and that a "national contacts" standard should be applied. Docket no. 16 at 15–16. The defendants initially agreed with that position, docket no. 12 at 8–9, but later argued that only their contacts with the state of Delaware could be considered in the context of a due process analysis. Docket no. 51 at 5–7.

■ In *its* more recent briefing, Harman takes the position that Bankruptcy Rule 7004 abrogates the requirements of due process when determining whether a court may exercise in personam jurisdiction over a defendant. In support of this proposition, Harman misreads some unfortunately broad language in case decisions stating that "the theory of minimum contacts upon which personal jurisdiction is *typically* established is inapplicable in bankruptcy cases." *E.g., In re New York Trap Rock Corp.,* 155 B.R. 871, 885 (Bankr.S.D.N.Y.1993) (emphasis added) (collecting cases). This court has carefully reviewed the full factual background and legal analysis of those cases. Those cases were only stating that the forum of the United States rather than the "typical" forum of the State (in which the bankruptcy court sits) may be applicable for the purposes of the minimum contacts analysis.[5]

Quite simply, Bankruptcy Rule 7004 cannot eliminate the protections of the Due Process Clause.

■ Each defendant *is* entitled to due process. Due process requires that, to subject a defendant to an in personam judgment, sufficient "minimum contacts" must exist between the defendant and the forum to satisfy "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Harman has the burden of showing sufficient minimum contacts exist. *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991).

---

4. Whether the Fifth Amendment or Fourteenth Amendment Due Process Clause is implicated here will not be addressed, as the analysis of the personal jurisdiction issue is the same under either clause. *E.g., DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 286 n. 3 (3d Cir.1981).

5. The *Trap Rock* court also appropriately limited the holding of the much earlier case of *Lone Star Indus., Inc. v. Compania Naviera Perez Companc (In re Schack Glass Indus., Inc.),* 20 B.R. 967 (Bankr.S.D.N.Y.1982), a case upon which Harman relies. 155 B.R. at 889 n. 13.

### C. *The National Contacts Standard Shall be Applied.*

As suggested by the *Trap Rock* line of cases, while traditionally the "forum" referred to is the State in which the federal court sits, in appropriate circumstances, the forum is instead the United States as a whole. The Third Circuit Court of Appeals agrees. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293–94 (3d Cir.1985). In that case, the Court declined to apply the "national contacts test" only because there was no applicable "federal statute authorizing nationwide service of process." *Id.* at 295. Here, however, there is Bankruptcy Rule 7004(d), which authorizes such service. This rule is sufficient to allow the bankruptcy court to consider each defendant's contacts with the United States as a whole. *See, e.g., Donald G. Atteberry, DVM, P.A. v. Barclays Bank PLC (In re Donald G. Atteberry, DVM, P.A.),* 159 B.R. 1, 4–6 (D.Kan.1993) (collecting and discussing cases, and concluding that where Rule 7004(d) is used to serve process, the compelling weight of the authority supports consideration of defendant's contacts with the United States as a whole).

### D. *Specific Personal Jurisdiction Exists.*

There are two types of personal jurisdiction that may exist in a given case: specific jurisdiction, and general jurisdiction. *E.g., Burger King v. Rudzewicz,* 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). While it is not clear from Harman's briefing which type of jurisdiction it believes exists here, the court need only consider the basis of specific jurisdiction.

Where the litigation arises out of the defendants' contacts with the forum, "specific jurisdiction" may exist. Assertion of specific jurisdiction is constitutional when: (1) the defendants have purposefully established minimum contacts within the forum; and (2) assertion of jurisdiction on the basis of these contacts comports with fair play and substantial justice. *E.g., Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. In determining whether the defendants purposefully established such contacts, their conduct and connection with the forum must be such that they should reasonably anticipate being haled into court there. It is essential that there be some act by which the defendants purposefully avail themselves of the privilege of conducting activities with the forum, thus invoking the benefits and protections of its law. *Id.,* at 474–75, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

Here, the defendants emphasize the lack of contacts of Dominion Canada II with the United States. Not surprisingly, the defendants do not emphasize Barrincorp's amalgamation into Dominion Canada II, and the prior set of transactions on December 9, 1988 involving Barrincorp. As a matter of Canadian corporate law and due process, these prior events allow this court to exercise specific jurisdiction over Dominion Canada II if specific jurisdiction can be exercised over Barrincorp. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463–64 (D.Del.1991) (discussing quality of relation necessary between two corporations to impute forum contacts of the first to the second); *see generally* Lea Brilmayer & Kathleen Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies and Agency,* 74 Cal.L.Rev. 1 (1986) (discussing the connection between substantive corporate law and personal jurisdiction over related corporations).

Barrincorp was a party to the purchase agreement. The subject matter of the purchase agreement was two corporations. These two corporations were incorporated in Delaware and Tennessee. Significant business operations of these corporations occurred in Tennessee and other states. It is the operations of these corporations and the agreement which underlie the present adversary proceeding. Thus, there is a substantial connection between Barrincorp and the forum, and out of which the litigation arises. *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185.

Equally important, these connections with the forum of the United States are such that Barrincorp should reasonably anticipate being haled into a court within the United States. First, it is reasonable that a dispute

concerning the domestic operations of a Tennessee or Delaware corporation, the real objects of the December 9, 1988 transaction, would be resolved within the United States. *Id.* at 479, 105 S.Ct. at 2185. Second, the representations of Barrincorp relating to compliance with environmental laws purposely invoke the benefits and protections of laws of the United States or the several states. *Id.* at 479–80, 482, 105 S.Ct. at 2185–86, 2187. In summary, Barrincorp has purposely established significant contacts with the forum of the United States out of which the litigation arises.

■ Next, the court must consider whether assertion of personal jurisdiction over Barrincorp and Dominion Canada II on the basis of these contacts comports with fair play and substantial justice. Factors to consider include the burden on the defendants, the forum's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *E.g., Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184–85.

While the corporate defendants may be burdened by having to litigate in the United States, nothing in the record indicates this burden is so substantial as to achieve constitutional magnitude. *Id.* at 484, 105 S.Ct. at 2188. For example, there are no facts to show that the defendants lack the resources to fairly litigate this case in a forum in the United States. Moreover, the forum of the United States has a significant interest in enforcing federal and state environmental laws. Finally, important records and witnesses relating to the alleged noncompliance of Dominion Tennessee and Dominion Auto Delaware with environmental laws would likely be located at or near sites where they operated. *See Shaffer v. Heitner,* 433 U.S. 186, 208, 97 S.Ct. 2569, 2581–82, 53 L.Ed.2d 683 (1977).

Thus, the court is satisfied that Harman has met its burden to show that specific personal jurisdiction exists over both defendants. The issue of whether general personal jurisdiction exists is not addressed.

## VI. *Conclusion*

An order in accordance with this Opinion is attached.

## *ORDER*

AND NOW, October 19, 1994, for the reasons stated in the attached Memorandum Opinion, THE COURT FINDS THAT:

The defendant Dominion Automotive Industries is the corporation resulting from the amalgamation of DBC Acquisition and Barrincorp Industries, Inc.

### AND

IT IS ORDERED THAT:

The motion of Dominion Automotive Industries, Inc. and Barrincorp Industries, Inc. to dismiss for lack of personal jurisdiction is **DENIED.**